## In re IBM ANTITRUST LITIGATION.

*Data Research Corp., et al. v. IBM,* Southern District of New York, Civil Action No. 71 Civ. 1451.

*IBM v. VIP Systems, et al.,* District of Columbia, Civil Action No. 828-70.

### No. 18.

Judicial Panel on Multidistrict Litigation.

June 23, 1971.

Before ALFRED P. MURRAH, Chairman, and JOHN MINOR WISDOM, EDWARD WEINFELD, EDWIN A. ROBSON, WILLIAM H. BECKER and STANLEY A. WEIGEL, Judges of the Panel.

## OPINION AND ORDER

### PER CURIAM.

Since it appeared to the Clerk of the Panel that each of the above actions shared common questions of fact with the actions previously transferred to the District of Minnesota and assigned to Judge Phillip Neville for coordinated or consolidated pretrial proceedings under 28 U.S.C. § 1407, a "Conditional Transfer Order" was entered transferring both actions to the District of Minnesota on the basis of the prior hearings and for the reasons expressed in previous opinions and orders of the Panel. In re IBM Antitrust Litigation, 319 F.Supp. 926 (Jud.Pan.Mult.Lit.1970), 314 F. Supp. 1253 (Jud.Pan.Mult.Lit.1970), 302 F.Supp. 796 (Jud.Pan.Mult.Lit.1969). Control Data Corporation, the plaintiff in the only originally transferred action still pending in Minnesota, filed a timely notice of opposition to the transfers and a motion to vacate both transfer orders.[1] Data Research Corporation joined in the motion opposing transfer of its case to the District of Minnesota. VIP Systems did not file a response to the motion but did, at oral argument, oppose the transfer of its case to the District of Minnesota. IBM strongly supports the transfer of the *Data Research Case* to Minnesota and would support the transfer of the *VIP Systems Case* if the antitrust counter-claim is to be seriously prosecuted.

The parties do not disagree that these two cases should be transferred to Minnesota for coordinated or consolidated pretrial proceedings if they are going to involve substantial discovery which is duplicative of that going forward in cases now in Minnesota but they strongly disagree as to whether or not such duplicative discovery is inevitable or even probable.

The *Control Data Case* is very broad as the plaintiff, in essence, alleges that IBM has monopolized the entire "computer industry", both domestically and internationally, including submarkets in hardware, software, and auxiliary equipment. The *Data Research Case* on the other hand involves a very limited type of auxiliary equipment, specifically a "punch verifier adapter" and the *VIP Case* involves only "electronic text editing services", a rather specialized computer application.

To the extent that VIP and Data Research claim that IBM has been able to monopolize *these* submarkets because of its dominant position in the computer industry as a whole, there may be some overlapping questions of fact between their cases and those now in Minnesota. However Control Data claims that it has been damaged by IBM's alleged monopolization of the entire computer industry, including hardware, software and auxiliary equipment, while Data Research's damage is based on an asserted monopoly of "the narrow market for card punch machines and card punch verifiers." VIP presents a similarly limited contention. Thus, while these parties all charge IBM with maintaining a broadly defined monopoly, the emphasis of these two cases and the *Control Data Case* are clearly different and the scope and breadth of discovery are likely to be substantially different.

The *IBM Litigation* being processed in Minnesota is extremely complex. It has been said that hundreds of millions of documents will be produced and that discovery may take several years. We would be reluctant to require any party whose *necessary* discovery is much more limited to take part in this massive discovery program. Of course, we would be equally reluctant to subject IBM to unlimited overlapping discovery demands made by different parties in different

---

1. *Control Data* did not appear at the hearing but relied on the pleadings filed by it in these and other related cases.

courts. Since VIP and Data Research deny that any degree of duplicitous discovery is likely to occur, we think that the best course is to decline to transfer these cases at this time without prejudice to the right of any party to seek transfer if it becomes certain that extensive duplicative discovery will be required.

Transfer denied.